516 A.2d 1308

The Pennsylvania State Education Association et al., Petitioners *v.* Commonwealth of Pennsylvania, Department of Education; Board of School Directors of The Midland School District; Board of School Directors of The Beaver Area School District, Respondents.

Argued September 9, 1986, before President Judge CRUMLISH, JR., Judge COLINS, and Senior Judge BARBIERI, sitting as a panel of three.

*Anthony D. Newman,* with him, *Lynne L. Wilson,* for petitioners.

*Richard L. Davis,* Deputy Attorney General, with him, *Michael B. Sutton,* Deputy Attorney General, *Andrew S. Gordon,* Chief Deputy Attorney General, Chief Litigation Section, and *LeRoy S. Zimmerman,* Attorney General, for respondent, Department of Education.

*John J. Petrush,* for respondents, Beaver Area School District and Board of School Directors of Beaver Area School District.

OPINION BY JUDGE COLINS, October 24, 1986:

The Pennsylvania State Education Association (PSEA), on behalf of its members, Gary Woods and Dale C. Stuby, furloughed teachers, and Beatrice, Jean L. and Martin Vincent Schulte, Jr., a mother and her minor children, respectively, (petitioners) have petitioned this Court to have the tuition agreement entered into by the Boards of School Directors of the Midland Borough (Midland) and Beaver Area (Beaver) School Districts declared invalid and to enjoin the respective Boards of Directors from implementing the tuition agreement. Petitioners also seek to enjoin the Department of Education (Department) from making any subsidy payments on behalf of the students affected by this agreement.

Petitioners' application for preliminary relief was earlier denied by a single Judge of this Court and, in the decision accompanying that denial, the determination of the legality of the tuition agreement inherent in the petitioners' request for declaratory relief was reserved for a panel of this Court. We now consider as well respondents' preliminary objections which raise jurisdictional questions and a demurrer.

### Statement of the Controversy

This case involves yet another tragic repercussion of the changing economic conditions in western Pennsylvania. On April 9, 1986, the Midland School Board of Directors, confronted with a declining student census, a diminishing revenue base and a deteriorating high

school building,[1] adopted a resolution[2] to send its students in grades seven through twelve to Beaver on a tuition basis for a period of five years, commencing with the 1986-87 school year. A written agreement was entered into between the two school boards formalizing the arrangements between the parties. The agreement had no impact upon Midland's elementary program for students in kindergarten through grade 6. Thirteen tenured teachers from Midland were subsequently furloughed, pursuant to School Board resolution.

PSEA, on behalf of its members, furloughed teachers, Beatrice Schulte, a resident taxpayer of Midland and mother of two minor children affected by the agreement, Jean and Martin, also named in this action, sought declaratory and injunctive relief from the above action of the Midland and Beaver School Boards of Directors, which injunction, as we have indicated, was denied.

Respondents now urge us to dismiss this matter because the Department is not properly a party such that we lack jurisdiction to decide the controversy, pursuant to 42 Pa. C. S. §761, which section of the Judicial Code confers original jurisdiction on this Court in all civil actions or proceedings "against the Commonwealth." Since we agree with respondents' contention that the

---

[1] As a result of the critical disrepair of the high school building and the prohibitive costs of renovation, Midland was forced to close the building in 1985 and consolidate the high school with the Midland elementary school. The consolidation resulted in overcrowding. Gym classes were held in the cafeteria. Specialized facilities, such as chemistry laboratories requiring specialized air ventilation systems, were unavailable.

[2] The change in organizational grade pattern as adopted by the Midland Board of Directors was approved by the Department as required in 22 Pa. Code §5.9(c). The Department informed Midland that it had no authority to validate the agreement and that Midland was not required to obtain Department approval.

Department is improperly joined, we transfer this suit to the Court of Common Pleas of Beaver County.

For this court to have original jurisdiction over a suit against the Commonwealth and another party, the Commonwealth must be an indispensable party to the action. *Piper Aircraft Corp. v. Insurance Co. of North America,* 53 Pa. Commonwealth Ct. 209, 417 A.2d 283 (1980). By general definition, an indispensable party is one whose rights are so connected with the claims of the litigants that no relief can be granted without infringing on those rights. *Id.*

Section 7540 of the Declaratory Judgments Act, 42 Pa. C. S. §7540(a), defines the concept of an indispensable party by providing that "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration. . . ." A Commonwealth agency whose interest will be affected by a declaration, sought by a plaintiff against another, is an indispensable party. *Piper; Pleasant Township v. Erie Insurance Exchange,* 22 Pa. Commonwealth Ct. 307, 348 A.2d 477 (1975).

The mere naming of the Commonwealth in an action does not conclusively establish the jurisdiction of this Court, *Local 302, International Association of Firefighters v. The City of Allentown,* 55 Pa. Commonwealth Ct. 599, 423 A.2d 1119 (1980), and the joinder of the Commonwealth where it is only tangentially involved is improper. *Scherbick v. Community College of Allegheny County,* 479 Pa. 216, 387 A.2d 1301 (1978). Moreover, a Commonwealth agency should not be declared an indispensable party unless meaningful relief cannot conceivably be afforded without the sovereign itself becoming involved. *Springdale Township v. Allegheny County Board of Property Assessment,* 78 Pa. Commonwealth Ct. 100, 467 A.2d 74 (1983). We believe that the involvement of the Department in the im-

plementation of the subject tuition agreement was minimal and, further, that meaningful relief can readily be afforded without the inclusion of the Department in the instant matter.

The Amended Petition for Review filed with this Court requested that the Department be enjoined from making any subsidy payments on behalf of the students affected by the tuition agreement and alleged the following activities by the Department:

17. By letter dated May 12, 1986, Margaret A. Smith, Secretary of Education, informed the Beaver Area Superintendent of Schools that the tuition agreement had been circulated to various bureaus in the Department of Education, including the legal office, and that the Department 'found no unacceptable provisions contained in the agreement.'

18. By letter dated May 12, 1986, Kenneth R. Miller, from the Division of Advisory Services of the Department of Education, informed the Midland Superintendent of Schools that the change in the organizational grade pattern by providing education for Midland students in grades seven through twelve at the Beaver Area School District was approved.

19. The Department of Education will make reimbursements under the Public School Code, 24 P.S. §25-2501 *et seq.* to the Midland School District or the Beaver Area School District on behalf of Midland students affected by the tuition agreement.

Petitioners have not suggested, and our research has not disclosed, any statutory duty abrogated by the Department in its actions as those actions are alleged in the Petition for Review. The Department indeed reviewed the substance of the agreement, upon the re-

quest of the Superintendent of the Beaver Schools, and stated that although it had "no legal authority to validate" the agreement, it found "no unacceptable provisions" contained therein.[3]

The mere fact that the Department gave advice to the Superintendent of the Beaver Schools, absent allegations that it was Department policy to give such advice or that the Department gave advice specifically interpreting provisions of the Public School Code of 1949 (Code),[4] does not involve it sufficiently that it may be called an indispensable party to this action. *See Local 302,* 55 Pa. Commonwealth Ct. at 604, 423 A.2d at 1122.

The Department did approve, pursuant to 22 Pa. Code §5.9(c),[5] the change in organizational grade pattern providing for the discontinuance of grades seven through twelve at Midland while maintaining the Midland Elementary School. Again, we fail to see how such approval implicates the Department so as to involve it in the instant controversy. Nor have petitioners alleged fraudulent, capricious or arbitrary conduct on the part of the Department.

---

[3] In response to the request for review of the agreement, the Department responded as follows:

Although the Department of Education has no legal authority to validate this agreement and there is no legal requirement that the districts obtain department approval, the agreement was circulated to various department program areas for advisory input. . . . Based on this program review by staff, the department found no unacceptable provisions contained in the agreement.

[4] Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§1-101—27-2702.

[5] 22 Pa. Code §5.9(c) requires prior approval of the Department before establishing a new school or changing school organization. The Department stated as follows: "[t]his organizational change will provide the educational program for district students in grades 7 through 12 at the Beaver Area School District on a tuition basis."

The parties have entered a Stipulation of Facts stating that Midland will continue to receive reimbursement from the Department, pursuant to Section 25-2501 of the Code, 24 P.S. §25-2501. We emphasize that Petitioners do not allege that the subsidies paid by the Department will be altered by implementation of the agreement, either in amount or mode of payment. In fact, a representative of the Department testified at the hearing on Petitioner's Application for Injunctive Relief that "[i]t would be Midland we would pay the subsidy to in relation to these students, whether they go to Beaver Area on a tuition basis or not."

Clearly, meaningful relief can be afforded Petitioners without the direct involvement of the Department. Should this Court lack jurisdiction over this action, as we believe we do, the Court of Common Pleas of Beaver County is well capable of granting the relief requested, namely, an order enjoining the named School Districts from implementing the tuition agreement.

Petitioners cite *Action Coalition of Elders v. Allegheny County Institution District*, 493 Pa. 302, 426 A.2d 560 (1981), in support of the Department's inclusion in this case, a plurality decision of our Supreme Court thus lacking precedential value. *See LeGare v. Unemployment Compensation Board of Review*, 498 Pa. 72, 78, n.3, 444 A.2d 1151, 1154, n.3 (1982). Petitioners contend that we should assume jurisdiction of the instant matter to assure uniformity in judicial decisions involving Commonwealth agencies, a uniformity that might well be lacking should the Courts of Common Pleas interpret the duties of Commonwealth agencies in disparate fashion.

Justice FLAHERTY in *Action Coalition* did consider the purpose of the Commonwealth Court:

[t]o provide a judicial forum for the uniform and consistent resolution of questions of statewide

importance . . . [An agency] must have a clear idea of what its powers and duties are and would be severely handicapped if those duties varied from county to county.

493 Pa. at 315, 426 A.2d at 567, quoting *T & R Painting v. Philadelphia Housing Authority*, 466 Pa. 493, 498, 353 A.2d 800, 802 (1976).

The issue addressed by our Supreme Court in *Action Coalition* was "whether original jurisdiction of this action for declaratory relief [involving the Department of Public Welfare] lies in the Commonwealth Court or in the Court of Common Pleas," *Id.* at 303, 426 A.2d at 561, and, as such, is inapposite to our consideration here. The fact that the Courts of Common Pleas of this Commonwealth may reach different conclusions in no way confers jurisdiction on *this* Court where the subject state agency is in no fair way a party to the action.

Having determined that the Department is not a proper party to this action, we necessarily conclude that we have no jurisdiction in a declaratory judgment proceeding to determine whether the subject tuition agreement entered into by respondents School Districts is lawful. Having so found, we need not address other matters raised by respondents in preliminary objections.

Our procedural rules contemplate the transfer of cases where the court in which the action is filed lacks jurisdiction rather than the dismissal of such action. *See* 42 Pa. C. S. §5103 and Pa. R.C.P. 213(f). Accordingly, we will transfer this case to the Court of Common Pleas of Beaver County for further proceedings consistent with this opinion.

## ORDER

AND NOW, October 24, 1986, the Preliminary Objections filed by Respondents as to the jurisdiction of this

Court are sustained and the Respondents' Preliminary Objections in the nature of a demurrer are transferred to the Court of Common Pleas of Beaver County pursuant to Section 5103 of the Judicial Code, 42 Pa. C. S. §5103, and Pa. R.C.P. 213(f).

Jurisdiction relinquished.

### ORDER

AND NOW, November 14, 1986, the Motion for Clarification of Order filed on behalf of the Commonwealth of Pennsylvania, Department of Education, in the above-captioned matter, is hereby granted and the order entered on October 24, 1986, is amended to read as follows:

AND NOW, October 24, 1986, the Preliminary Objections filed by Respondents as to the jurisdiction of this Court are sustained, the Commonwealth of Pennsylvania, Department of Education is dismissed from the action, and the remaining Respondents' Preliminary Objections in the nature of a demurrer are transferred to the Court of Common Pleas of Beaver County pursuant to Section 5103 of the Judicial Code, 42 Pa. C. S. §5103 and Pa. R.C.P. 213(f). Jurisdiction relinquished.